## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ASHLEY POTTS f/k/a**
**ASHLEY TAYLOR,**

     **Plaintiff,**

**v.**                                  **Case No.:**

**SAS MARKETING GROUP**
**LLC d/b/a GLOBAL LOAN**
**CONSOLIDATION, GLOBAL**
**DOC PREP INC, and**
**EQUITABLE ACCEPTANCE**
**CORPORATION,**
                                      **DEMAND FOR JURY TRIAL**

     **Defendants.**
_____/

## PLAINTIFF'S COMPLAINT
## WITH INJUNCTIVE RELIEF SOUGHT

**COMES NOW**, Plaintiff, **ASHLEY POTTS f/k/a ASHLEY TAYLOR** ("Ms. Taylor" or "Plaintiff"), by and through the undersigned counsel, and hereby sues and files this Complaint and Demand for Jury Trial with Injunctive Relief Sought against Defendants, **SAS MARKETING GROUP LLC d/b/a GLOBAL LOAN CONSOLIDATION** ("GLC"), **GLOBAL DOC PREP INC** ("Global Doc"), and **EQUITABLE ACCEPTANCE CORPORATION** ("EAC") (collectively "Defendants"), and in support thereof states as follows:

### *Introduction*

1.    This action arises out of an alleged "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendants' violations of the Restrictions on Use of

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **1** of 33

Telephone Equipment, 47 U.S.C. § 227 *et. seq.* ("TCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1692 ("RICO"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 et. seq. ("FCCPA"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et. seq.* ("FDUTPA"), by fraudulently representing that a debt was owed by Ms. Taylor when Defendants knew such alleged debt to be illegal and invalid. Specifically, the underlying alleged debt arises from Defendants' fraudulent student loan consolidation practices that illegally charge up-front fees for student loan consolidation and thereafter finance the illegal up-front fees for student loan consolidation, and from Defendants' representations that the Defendants are affiliated with the United States Department of Education when consolidating student loans.

## *Jurisdiction and Venue*

2.      This Court has subject matter jurisdiction over the instant case under 28 U.S.C. §1331 as the instant case presents a federal question under the TCPA.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391(d) and Fla. Stat. § 559.77(1) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## *Parties*

4.      Plaintiff, Ms. Taylor, was and is a natural person and, at all times material hereto, is an adult, a resident of Hillsborough County, Florida, a "consumer" as defined by the FDUPTA, Fla. Stat. § 501.203(7), and an alleged "debtor" or "consumer" as defined by the FCCPA, Fla. Stat. § 559.55(8).

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **2** of 33

5.      Ms. Taylor is the "called party" as referenced in the TCPA, 47 U.S.C. § 227 (b) (1) (A) (iii), for all calls placed to cellular telephone number 859-***-9196 ("Ms. Taylor's Cellular Telephone").

6.      At all times material hereto, GLC was and is a Florida Limited Liability Company with its principle place of business in the State of Florida and its registered agent, ANDREW RUDNICK, located at 5301 N. Federal Highway, Suite 250, Boca Raton, FL 33487.

7.      At all times material hereto, Global Doc was and is a Florida profit corporation with its principal place of business in the State of Florida and its registered agent, CATHERINE RUDNICK, located at 5301 North Federal Highway, Suite 250, Boca Raton, FL 33487.

8.      At all times material hereto, EAC was and is a Minnesota Corporation with its principle place of business in the State of Minnesota and its registered agent, JEFF D. HENN, located at 1200 Ford Road, Minnetonka, Minnesota 55305.

9.      At all times material hereto, EAC and GLC have entered into a Master Dealer Agreement, or similarly titled document, that establishes an agency relationship between the respective Defendants.

### *Statements of Fact*

10.     In or around July 2016, GLC sent a marketing text to Ms. Taylor's Cellular Telephone that advertised GLC's student loan consolidation services.

11.     Ms. Taylor had never provided GLC with her Cellular Telephone number.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 3 of 33

12.     At this point in time, Ms. Taylor was enrolled in a PHD program and did, in fact, have three student loans with Navient Solutions, LLC (collectively "Navient Student Loans").

13.     Ms. Taylor's Navient Student Loans were in deferment due to her active student status in July 2016.

14.     In response to GLC's marketing text, Ms. Taylor called GLC to get more information about its student loan consolidation services.

15.     During Ms. Taylor's call to GLC, GLC represented that it was affiliated with the United States Department of Education, that its consolidation services were pursuant to the William D. Ford Act, and informed Ms. Taylor that there was a $1,314.00 up-front charge for its student loan consolidation services.

16.     Ms. Taylor requested that GLC send her documentation to review so she could make an informed decision about using GLC's student loan consolidation services.

17.     On July 22, 2016, Ms. Taylor e-mailed GLC stating, in relevant part:

> "In researching the William D. Ford Act, I do not see where it states that loans can be forgiven once a case is made for forgiveness due to low income, or that the loan amount will be decreased. Will you point me to where exactly the Dept. of Education says this?
>
> Also, I would like to shop around a bit before totally agreeing to consolidate my loans with you guys. I've read some things online about the "business" of loan consolidation and loan forgiveness and I've called into the Dept of Education and other Federal education departments and they don't seem to know about your guys as a third party they work with. This is very concerning to me.
>
> All in all, I would like to hold off on this consolidation process until I am better informed of where my money is

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **4** of 33

going, if it is actually possible to get loans forgiven in the way we've discussed, etc."

*See* **Exhibit "A."**

18.     GLC e-mailed Ms. Taylor in response, stating, in relevant part:

". . . It's not a question if you will pay less back in this program we were going to put in. The government is who approved you. If you look at your documents in The GLC email it says so. Its there program.
. . .
If you want to cancel, I will cancel you and send email confirming it!"

*See* **Exhibit "A."**

19.     On July 26, 2016, Ms. Taylor e-mailed GLC again, stating that its student

loan consolidation services sounded too good to be true and thus scam-like and needed to

be canceled.

20.     GLC responded to Ms. Taylor via e-mail that same day, stating:

"Ashley,

The program is an INCOME BASED REPAYMENT PLAN. It's been around since 2007. It's an actual program through the government. You qualify based on your situation. It's not too good to be true. It's under a Congress approved program called, William D. Ford act.

You can either stay in your current program and pay back your total loan balance plus fees, or pay less back in this government program.

Student Loan debt is over a trillion dollars, that's why the government created these programs. I have no idea what you looked at but if you looked at William D. Ford forgiveness programs offered through the Dept of Education, a program which Congress approved in 2007, you would see these are very legitimate programs. I can assure you that your making a very bad decision in canceling.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 5 of 33

I will forward over your request. Wish you Luck!"

*See* **Exhibit "B."**

21.     At no time did Ms. Taylor enter into a contract to purchase GLC's student loan consolidation services.

22.     Even if Ms. Taylor entered into a contract with GLC according to GLC's standards, she expressly canceled any such contract on July 26, 2016.

23.     The very next day, EAC e-mailed Ms. Taylor a letter congratulating her on her purchase of GLC's student loan consolidation services and informing Ms. Taylor that EAC had financed Ms. Taylor's student loan consolidation services purchase from GLC ("EAC Letter"). *See* **Exhibit "C."**

24.     The EAC Letter states:

> "Dear Ashley,
> Congratulations on your recent purchase from [GLC]!
>
> Your payments will be automatically posted to your credit card each month on the due date.
>
> Please visit our website at www.equitableacceptance.com to address changes to your expiration date, changes to your credit card number or to manage your account in general.
>
> *Deferred Terms*
> *To avoid any finance charges your account must be paid in full and posted by 08/20/16.*
>
> Yours truly
> [EAC]"

*See* **Exhibit "C" (emphasis added).**

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 6 of 33

25.     Ms. Taylor immediately sent an e-mail to GLC stating, "Please cancel this" and forwarded EAC's e-mail with the EAC Letter to GLC's attention. *See* **Exhibit "D."**

26.     Ms. Taylor did not hear from GLC or EAC for a few months thereafter and believed that she was done dealing with their fraudulent attempts to charge her money for federal government student loan consolidation services she never agreed to purchase.

27.     Unfortunately, Ms. Taylor was wrong. On November 3, 2016, Global Doc sent an e-mail to Ms. Taylor attempting to collect the alleged outstanding balance owed for alleged GLC student loan consolidation services that had been financed through EAC ("Debt"). *See* **Exhibit "E."**

28.     Global Doc's e-mail states, in relevant part:

> "In order to avoid further costs, and the cancellation of your student loan consolidation, please make your payment to [EAC] within 5 business days. If your payment is not received within 5 business days, we will be forced to put your account into default and *we will no longer act on your behalf with the department of education. This will also appear on your credit report as derogatory*."

> *See* **Exhibit "E."**

29.     Ms. Taylor immediately responded to Global Doc's e-mail and stated, "I never agreed to this plan. Nor did I sign anything. Please cancel this out and delete my info!" *See* **Exhibit "E."**

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **7** of **33**

30.     Despite Ms. Taylor's repeated attempts to inform Global Doc, EAC, and GLC that she never agreed to GLC's student loan consolidation services, EAC began placing calls to Ms. Taylor's Cellular Telephone in attempts to collect the Debt.

31.     Ms. Taylor never provided her Cellular Telephone number to EAC, nor did Ms. Taylor ever authorize EAC to place calls to her Cellular Telephone for any reason.

32.     Ms. Taylor spoke with EAC representatives and demanded that EAC stop processing documents without her approval.

33.     Ms. Taylor also demanded that EAC stop calling her Cellular Telephone.

34.     Tired of EAC's calls, on November 18, 2016, Ms. Taylor sent a frantic e-mail to GLC. *See* **Exhibit "F."**

35.     Specifically, Ms. Taylor's e-mail to GLC states:

"Ryan!

WHY am I getting charged for services by your company that I DID NOT sign onto???!!!! Reread this email and others I have sent you that IN NO WAY indicate that I am hiring you or your company for any help at all.

I need your help resolving this issue because I have the headache of [EAC] calling me and trying to get money I supposedly owe you. This is so nuts.

Please call or write me ASAP."

*See* **Exhibit "F."**

36.     Ms. Taylor never received a response from GLC.

37.     Despite Ms. Taylor's demands, EAC's calls to her Cellular Telephone continued through Spring of 2017.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **8** of **33**

38.     EAC even furnished negative credit reporting information regarding the Debt to all three credit reporting agencies through April of 2017, which reported on Ms. Taylor's credit report and lowered her credit score.

39.     Thereafter, Ms. Taylor was reviewing her credit reports and was shocked to see that GLC and/or EAC had, in fact, consolidated her Navient Student Loans without her authorization ("Unauthorized Consolidation").

40.     GLC and/or EAC's Unauthorized Consolidation combined Ms. Taylor's three Navient Student Loans into one Fed Loan student loan.

41.     GLC and/or EAC's Unauthorized Consolidation was completed in September of 2016.

42.     Adding insult to injury, GLC and/or EAC's Unauthorized Consolidation actually resulted in Ms. Taylor's average student loan interest rate increasing, which will directly and proximately cause Ms. Taylor to pay significantly more in interest towards her student loans over the lifetime of her repayment plan.

43.     Defendants' actions have directly and proximately caused Ms. Taylor severe emotional distress.

44.     Defendants' actions have directly and proximately caused Ms. Taylor to lose sleep.

45.     Defendants' actions have invaded Ms. Taylor's privacy by consolidating her Navient Student Loans without her authorization or permission.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **9** of **33**

### *Count 1: Violation of the Telephone Consumer Protection Act*
### *(against GLC)*

46.     Ms. Taylor re-alleges paragraphs 1-45 and incorporates the same herein by reference.

47.     The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

48.     Ms. Taylor never provided any consent for GLC to send text messages to Ms. Taylor's Cellular Telephone by use of an automatic telephone dialing system ("ATDS").

49.     This is because Ms. Taylor had no prior business relationship with GLC to provide any prior express consent for GLC to send text messages to Ms. Taylor's Cellular Telephone by use of an ATDS.

50.     Despite never having Ms. Taylor's prior express consent to send text messages to Ms. Taylor's Cellular Telephone, GLC sent at least one text message to Ms. Taylor's Cellular Telephone.

51.     GLC did not place any emergency calls to Ms. Taylor's Cellular Telephone.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **10** of 33

52.     GLC willfully and knowingly sent text messages to Ms. Taylor's Cellular Telephone.

53.     Ms. Taylor knew that GLC sent text message sto Ms. Taylor's Cellular Telephone using an ATDS because of the automated format of GLC's text message.

54.     GLC used an ATDS when it sent at least one text message to Ms. Taylor's Cellular Telephone.

55.     At least one text message that GLC sent to Ms. Taylor's Cellular Telephone was sent using a telephone dialing system that has the capacity to store telephone numbers to be texted.

56.     At least one text message that GLC sent to Ms. Taylor's Cellular Telephone was sent using a telephone dialing system that has the capacity to produce telephone numbers to be texted without human intervention.

57.     At least one text message that GLC sent to Ms. Taylor's Cellular Telephone was sent using a telephone dialing system that uses a random number generator.

58.     At least one text message that GLC sent to Ms. Taylor's Cellular Telephone was sent using a telephone dialing system that uses a sequential number generator.

59.     GLC has corporate policies and procedures in place that permit it to use an ATDS to send text messages to individuals to market its services to said individuals, such as Ms. Taylor, for its financial gain.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **11** of **33**

60.     GLC has corporate policies and procedures in place that permit it to use an ATDS to send text messages to individuals and to send text messages to individuals using such devices, just as it did to Ms. Taylor's Cellular Telephone, with no way for the individual and recipient of the texts to permit, elect, or invoke the removal of the individuals' cellular telephone number from GLC's marketing text message list.

61.     The structure of GLC's corporate policies and/or procedures permits the continuation of text messages to individuals like Ms. Taylor, despite individuals like Ms. Taylor revoking any consent that GLC believes it may have to send such text messages.

62.     GLC knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of sending text messages using an ATDS to individual's cellular telephones, like the texts that it sent to Ms. Taylor's Cellular Telephone.

63.     Defendant's text message(s) harmed Ms. Taylor by trespassing upon and interfering with Ms. Taylor's rights and interests in her Cellular Telephone line.

64.     Defendant's text message(s) harmed Ms. Taylor by wasting her time.

65.     Defendant's text message(s) harmed Ms. Taylor by being a nuisance and causing her aggravation.

66.     Defendant's text message(s) harmed Ms. Taylor by causing a risk of personal injury to Ms. Taylor due to interruption and distraction.

67.     Defendant's text message(s) harmed Ms. Taylor by invading her privacy.

68.     All conditions precedent to this action have occurred.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **12** of **33**

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against GLC as follows:

    a.   Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

    b.   Awarding treble damages pursuant to 47 U.S.C. § 227 (b) (3) (C);

    c.   Awarding Plaintiff costs;

    d.   Ordering an injunction preventing further wrongful contact by the Defendant; and

    e.   Any other and further relief as this Court deems equitable.

### _Count 2: Violation of the Telephone Consumer Protection Act_
### _(against EAC)_

69.    Ms. Taylor re-alleges paragraphs 1-45 and incorporates the same herein by reference.

70.    The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

71.    Ms. Taylor never provided any consent for EAC to call Ms. Taylor's Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
_Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp._
Page **13** of **33**

72. This is because Ms. Taylor had no prior business relationship with EAC to provide any prior express consent for EAC to call Ms. Taylor's Cellular Telephone by the use of an ATDS or artificial voice or prerecorded message.

73. Despite never having Ms. Taylor's prior express consent to call Ms. Taylor's Cellular Telephone by the use of an ATDS or artificial voice or prerecorded message, EAC placed calls to Ms. Taylor's Cellular Telephone at least thirty (30) times from November of 2016 through Spring of 2017.

74. Each of the calls that EAC placed to Ms. Taylor's Cellular Telephone was placed in an attempt to collect an alleged Debt from Ms. Taylor.

75. Further, Ms. Taylor expressly revoked consent to have EAC call Ms. Taylor's Cellular Telephone by the use of an ATDS or artificial voice or prerecorded message in or around November of 2016 when she demanded that EAC stop processing documents without her approval and that EAC stop calling her Cellular Telephone.

76. Defendant did not have Ms. Taylor's consent to call her Cellular Telephone at any point in time.

77. Ms. Taylor never provided EAC with Ms. Taylor's Cellular Telephone number.

78. EAC did not place any emergency calls to Ms. Taylor's Cellular Telephone.

79. EAC willfully and knowingly placed non-emergency calls to Ms. Taylor's Cellular Telephone.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **14** of 33

80.     Ms. Taylor knew that  EAC called Ms. Taylor's Cellular Telephone using an ATDS because she heard a pause when she answered one of the calls from EAC on her Cellular Telephone before a live representative of EAC came on the line.

81.     Ms. Taylor knew that EAC called Ms. Taylor's Cellular Telephone using a prerecorded voice because EAC left Ms. Taylor at least one voicemail using a prerecorded voice.

82.     EAC used an ATDS when it placed at least one call to Ms. Taylor's Cellular Telephone.

83.     Under information and belief, EAC used an ATDS when it placed at least ten calls to Ms. Taylor's Cellular Telephone.

84.     Under information and belief, EAC used an ATDS when it placed at least twenty calls to Ms. Taylor's Cellular Telephone.

85.     Under information and belief, EAC used an ATDS when it placed all calls to Ms. Taylor's Cellular Telephone.

86.     At least one call that EAC placed to Ms. Taylor's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

87.     At least one call that EAC placed to Ms. Taylor's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

88.     At least one call that EAC placed to Ms. Taylor's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 15 of 33

89.     At least one call that EAC placed to Ms. Taylor's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

90.     At least one call that EAC placed to Ms. Taylor's Cellular Telephone was made using a prerecorded voice.

91.     EAC has recorded at least one conversation with Ms. Taylor.

92.     EAC has recorded more than one conversation with Ms. Taylor.

93.     EAC has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Ms. Taylor, for its financial gain.

94.     EAC has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Ms. Taylor's Cellular Telephone, with no way for the called party and recipient of the calls to permit, elect, or invoke the removal of the called party and recipient of the calls' cellular telephone number from EAC's call list.

95.     The structure of EAC's corporate policies and/or procedures permits the continuation of calls to individuals like Ms. Taylor, despite individuals like Ms. Taylor revoking any consent that EAC believes it may have to place such calls.

96.     EAC knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephones, like the calls that it placed to Ms. Taylor's Cellular Telephone.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **16** of 33

97.   EAC has corporate policies to abuse and harass consumers like Ms. Taylor despite having actual knowledge that they are calling the wrong person and that the called person does not wish to be called.

98.   EAC's phone calls harmed Ms. Taylor by trespassing upon and interfering with Ms. Taylor's rights and interests in her Cellular Telephone line.

99.   EAC's phone calls harmed Ms. Taylor by wasting her time.

100.   EAC's phone calls harmed Ms. Taylor by being a nuisance and causing her aggravation.

101.   EAC's phone calls harmed Ms. Taylor by causing a risk of personal injury to Ms. Taylor due to interruption and distraction.

102.   EAC's phone calls harmed Ms. Taylor by invading her privacy.

103.   All conditions precedent to this action have occurred.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against EAC as follows:

a.   Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

b.   Awarding treble damages pursuant to 47 U.S.C. § 227 (b) (3) (C);

c.   Awarding Plaintiff costs;

d.   Ordering an injunction preventing further wrongful contact by the Defendant; and

e.   Any other and further relief as this Court deems equitable.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **17** of **33**

### *Count 3: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*
### *(as against EAC)*

104.    Ms. Taylor re-alleges paragraphs 1-45 and incorporates the same herein by reference.

105.    EAC violated the FCCPA.  EAC's violations include, but are not limited to, the following:

    a.    EAC violated Fla. Stat. § 559.72 (5) by disclosing to the credit reporting agencies information about the Debt, which affected Ms. Taylor's reputation, when EAC knew that the Debt was illegitimate and that Ms. Taylor did not owe the Debt.

    b.    EAC violated Fla. Stat. § 559.72 (6) by disclosing information concerning the Debt to the credit reporting agencies despite the fact that it was known to be disputed by Ms. Taylor because Ms. Taylor never owed the Debt and EAC failed to disclose that such Debt was disputed to the credit reporting agencies.

    c.    EAC violated Fla. Stat. § 559.72(7) by willfully engaging in conduct which can reasonably be expected to harass Ms. Taylor by persistently attempting to collect the Debt that Ms. Taylor never agreed to nor owes.

    d.    EAC violated Fla. Stat. § 559.72(9) by attempting to enforce a debt from Ms. Taylor that EAC knew was not legitimate.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **18** of **33**

106.    As a result of the above violation of the FCCPA, Ms. Taylor has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

107.    EAC's actions have damaged Ms. Taylor by invading her privacy.

108.    EAC's actions have damaged Ms. Taylor by causing her emotional distress.

109.    EAC's actions have damaged Ms. Taylor by causing her embarrassment.

110.    EAC's actions have damaged Ms. Taylor by causing her stress.

111.    EAC's actions have damaged Ms. Taylor by causing her aggravation.

112.    EAC's actions have damaged Ms. Taylor by harming her reputation.

113.    It has been necessary for Ms. Taylor to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

114.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against EAC as follows:

        a.   Awarding statutory damages as provided by Fla. Stat. §559.77,

        b.   Awarding actual damages;

        c.   Awarding punitive damages;

        d.   Awarding costs and attorneys' fees;

        e.   Ordering an injunction preventing further wrongful contact by the Defendant; and

        f.   Any other and further relief as this Court deems equitable.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **19** of 33

### Count 4: Violation of the Florida Consumer Collection Practices Act ("FCCPA") (as against Global Doc)

115.    Ms. Taylor re-alleges paragraphs 1-45 and incorporates the same herein by reference.

116.    Global Doc violated the FCCPA.  Global Doc's violations include, but are not limited to, the following:

a.  Global Doc violated Fla. Stat. § 559.72(3) by telling Ms. Taylor, who disputed the Debt because it was not owed by Ms. Taylor, that Global Doc would disclose to the credit reporting agencies negative information regarding Ms. Taylor's alleged "default" without also informing Ms. Taylor that the existence of any dispute would also be disclosed when it sent Ms. Taylor the e-mail dated November 3, 2016.

b.  Global Doc violated Fla. Stat. § 559.72(7) by willfully engaging in conduct which can reasonably be expected to harass Ms. Taylor by demanding payment from Ms. Taylor for illegitimate and illegal student loan consolidation services when Global Doc knew that Ms. Taylor did not owe the Debt and that Ms. Taylor had not agreed to have her Navient Student Loans fraudulently consolidated.

c.  Global Doc violated Fla. Stat. § 559.72(9) by attempting to enforce the Debt when Global Doc knew the Debt was not legitimate.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **20** of 33

d.   Global Doc violated Fla. Stat.   § 559.72(9) by asserting the existence of the legal right to furnish negative credit information regarding the Debt to the credit reporting agencies when Global Doc knew that no such right existed because Ms. Taylor did not owe the Debt.

e.   Global Doc violated Fla. Stat.   § 559.72(9) by asserting the existence of the legal right to charge Ms. Taylor for student loan consolidation services when Global Doc knew that no such legal right exists.

f.   Global Doc violated Fla. Stat.   § 559.72(9) by asserting the existence of the legal right to stop acting on Ms. Taylor's behalf with the Department of Education when Global Doc knew that no such legal right existed.

117.   As a result of the above violation of the FCCPA, Ms. Taylor has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

118.   Global Doc's actions have damaged Ms. Taylor by invading her privacy.

119.   Global Doc's actions have damaged Ms. Taylor by causing her emotional distress.

120.   Global Doc's actions have damaged Ms. Taylor by causing her embarrassment.

121.   Global Doc's actions have damaged Ms. Taylor by causing her stress.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **21** of 33

122.    Global Doc's actions have damaged Ms. Taylor by causing her aggravation.

123.    Global Doc's actions have damaged Ms. Taylor by harming her reputation.

124.    It has been necessary for Ms. Taylor to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

125.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Global Doc as follows:

    a.    Awarding statutory damages as provided by §559.77, Fla. Stat.;

    b.    Awarding actual damages;

    c.    Awarding punitive damages;

    d.    Awarding costs and attorneys' fees;

    e.    Ordering an injunction preventing further wrongful contact by the Defendants; and

    g.    Any other and further relief as this Court deems equitable.

### *Count 5: Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (against GLC)*

126.    Plaintiff re-alleges paragraphs 1-45 and incorporates the same herein by reference.

127.    At all times relevant hereto, GLC was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 22 of 33

128.   FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

129.   In determining whether conduct violates FDUTPA, the court should take into consideration whether the Federal Trade Commission ("FTC") and other federal courts deem such conduct to be an unconscionable, unfair, or deceptive act or practice under federal law. *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp.2d 1288, 1310 (S.D. Fla. Aug. 29, 2005) (citing FDUTPA, Fla. Stat. § 501.204(2)).

130.   Relevant to the instant action, in 2010, the FTC enacted the Telemarketing Sales Rule, 16 C.F.R. § 310.4 ("TSR"), which forbids sellers and telemarketers from requesting any up-front fee for debt relief, including debt consolidation services. *See* 16 C.F.R. § 310.4(a)(5)(i).

131.   Recently, there have been at least 36 FTC and State enforcement actions against companies with business practices identical to GLC's practices at issue here, including those against Strategic Student Solutions, LLC; Student Aid Center; Student Debt Doctor, LLC; American Student Loan Consolidators in Florida; M&T Financial Group (Student Debt Relief Group); etc.

132.   GLC engaged in unconscionable, unfair, and deceptive practices when it charged Ms. Taylor an up-front fee of $1,314.00 to consolidate Ms. Taylor's student loans.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 23 of 33

133. GLC also engaged in unconscionable, unfair, and deceptive practices when it thereafter consolidated Ms. Taylor's student loans without her authorization or permission.

134. GLC's unconscionable, unfair, and deceptive practices had a tendency or capacity to mislead consumers, including Ms. Taylor.

135. GLC's unconscionable, unfair, and deceptive practices had a tendency or capacity to create a false impression in consumers, like Ms. Taylor.

136. GLC's unconscionable, unfair, and deceptive practices were likely to, and did in fact, deceive reasonable consumers, including Ms. Taylor.

137. Under information and belief, there are a significant number of consumers, like Ms. Taylor, that have been a victim of GLC's fraudulent business practices as described herein.

138. GLC intentionally and knowingly engaged in unconscionable, unfair, and deceptive practices when it charged Ms. Taylor an up-front fee to consolidate her student loans.

139. GLC intentionally and knowingly engaged in unconscionable, unfair, and deceptive practices when it consolidated Ms. Taylor's student loans without her permission.

140. GLC knew or should have known that its conduct violated the FDUTPA and the TSR.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **24** of 33

141. As a result of the above violations of the FDUTPA, Ms. Taylor has been subjected to unconscionable, unfair, and deceptive trade practices for which she has been damaged.

142. GLC's actions have damaged Ms. Taylor by invading her privacy.

143. GLC's actions have damaged Ms. Taylor by causing her emotional distress.

144. GLC's actions have damaged Ms. Taylor by causing her embarrassment.

145. GLC's actions have damaged Ms. Taylor by causing her stress.

146. GLC's actions have damaged Ms. Taylor by causing her aggravation.

147. GLC's actions have damaged Ms. Taylor by harming her reputation.

148. It has been necessary for Ms. Taylor to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

149. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against GLC as follows:

  a. Entering an order enjoining the methods, acts, and practices;

  b. Awarding actual damages;

  c. Awarding punitive damages;

  d. Awarding costs and attorneys' fees;

  e. Awarding restitution; and

  f. Any other and further relief as this Court deems just and equitable under the premise.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 25 of 33

**Count 6: Violation of the Florida Deceptive and Unfair Trade Practices Act**
**("FDUTPA")**
**(against EAC)**

150.     Plaintiff re-alleges paragraphs 1-45 and incorporates the same herein by reference.

151.     At all times relevant hereto, EAC was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

152.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

153.     In determining whether conduct violates FDUTPA, the court should take into consideration whether the Federal Trade Commission ("FTC") and other federal courts deem such conduct to be an unconscionable, unfair, or deceptive act or practice under federal law. *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp.2d 1288, 1310 (S.D. Fla. Aug. 29, 2005) (citing FDUTPA, Fla. Stat. § 501.204(2)).

154.     Relevant to the instant action, in 2010, the FTC enacted the Telemarketing Sales Rule, 16 C.F.R. § 310.4 ("TSR"), which forbids sellers and telemarketers from requesting any up-front fee for debt relief, including debt consolidation services. *See* 16 C.F.R. § 310.4(a)(5)(i).

155.     Recently, there have been at least 36 FTC and State enforcement actions against companies with business practices identical to GLC's practices at issue here, including those against Strategic Student Solutions, LLC; Student Aid Center; Student

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **26** of 33

Debt Doctor, LLC; American Student Loan Consolidators in Florida; M&T Financial Group (Student Debt Relief Group); etc.

156.    EAC engaged in unconscionable, unfair, and deceptive practices when it financed the Debt without Ms. Taylor's permission and thereafter repeatedly attempted to collect the Debt from Ms. Taylor.

157.    EAC's unconscionable, unfair, and deceptive practices had a tendency or capacity to mislead consumers, including Ms. Taylor.

158.    EAC's unconscionable, unfair, and deceptive practices had a tendency or capacity to create a false impression in consumers, like Ms. Taylor.

159.    EAC's unconscionable, unfair, and deceptive practices were likely to, and did in fact, deceive reasonable consumers, including Ms. Taylor.

160.    Under information and belief, there are a significant number of consumers, like Ms. Taylor, that have been a victim of EAC's fraudulent business practices as described herein.

161.    EAC intentionally and knowingly engaged in unconscionable, unfair, and deceptive practices when it financed an up-front fee to consolidate Ms. Taylor's student loans.

162.    EAC intentionally and knowingly engaged in unconscionable, unfair, and deceptive practices when it thereafter repeatedly attempted to collect the Debt from Ms. Taylor.

163.    EAC knew or should have known that its conduct violated the FDUTPA and the TSR.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **27** of **33**

164.    As a result of the above violations of the FDUTPA, Ms. Taylor has been subjected to unconscionable, unfair, and deceptive trade practices for which she has been damaged.

165.    EAC's actions have damaged Ms. Taylor by invading her privacy.

166.    EAC's actions have damaged Ms. Taylor by causing her emotional distress.

167.    EAC's actions have damaged Ms. Taylor by causing her embarrassment.

168.    EAC's actions have damaged Ms. Taylor by causing her stress.

169.    EAC's actions have damaged Ms. Taylor by causing her aggravation.

170.    EAC's actions have damaged Ms. Taylor by harming her reputation.

171.    It has been necessary for Ms. Taylor to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

172.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against EAC as follows:

       a.   Entering an order enjoining the methods, acts, and practices;

       b.   Awarding actual damages;

       c.   Awarding punitive damages;

       d.   Awarding costs and attorneys' fees;

       e.   Awarding restitution; and

       f.   Any other and further relief as this Court deems just and equitable under the premise.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought

*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*

Page 28 of 33

**_Count 7: Violation of the Racketeer Influenced and Corrupt Organizations Act_**
**_("RICO")_**
**_(against Defendants)_**

173.    Plaintiff re-alleges paragraphs 1-45 and incorporates the same herein by reference.

174.    At all times relevant hereto, Defendants maintained a fraudulent student loan consolidation enterprise affecting interstate commerce.

175.    RICO, 18 U.S.C. § 1962(c), prohibits any person employed by or associated with any enterprise to conduct the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

176.    Relevant to the instant action, in 2010, the FTC enacted the Telemarketing Sales Rule, 16 C.F.R. § 310.4 ("TSR"), which forbids sellers and telemarketers from requesting any up-front fee for debt relief, including debt consolidation services. *See* 16 C.F.R. § 310.4(a)(5)(i).

177.    Under information and belief, the corporate officers and directors of Defendants are "persons" for the purpose of the RICO subsection that prohibits persons associated with enterprises from conducting the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

178.    Alternatively, Defendants' corporate entities are "persons" for the purpose of the RICO subsection that prohibits persons associated with enterprises from conducting the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt because Defendants' corporate entities received the bulk of the

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 29 of 33

monetary benefit derived from Defendants' pattern of racketeering activity or collection of unlawful debt.

179.    At all times relevant hereto, Defendants were all associated with the enterprise in separate and distinct roles that were all required for the enterprise to function. Specifically, under information and belief, Defendants' respective roles in the fraudulent student loan consolidation enterprise include, but are not limited to:

a.    GLC was responsible for marketing Defendants' fraudulent student loan consolidation enterprise to consumers and thereafter contracting with consumers;

b.    EAC was responsible for financing GLC's fraudulent student loan consolidation contracts with consumers and for collecting unlawful debts from consumers for the fraudulent student loan consolidation; and

c.    Global Doc was responsible for collecting unlawful debts from consumers for the fraudulent student loan consolidation on behalf of EAC.

180.    Defendants committed a pattern of racketeering activity or collection of unlawful debts as follows:

a.    GLC charged Ms. Taylor an up-front fee of $1,314.00 for student loan consolidation services;

b.    GLC represented that it was affiliated with the U.S. Department of Education when consolidating Ms. Taylor's student loans;

c.    GLC thereafter sold, assigned, or transferred Ms. Taylor's fraudulent student loan consolidation account to EAC;

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **30** of 33

d. EAC thereafter "financed" Ms. Taylor's fraudulent student loan consolidation and sent Ms. Taylor the letter dated July 27, 2016 that stated, "to avoid any finance charges your account must be paid in full and posted by 08/20/16" even though neither EAC nor GLC had consolidated Ms. Taylor's loans until September of 2016;

e. EAC also called Ms. Taylor's Cellular Telephone in attempts to collect the outstanding balance owed for the fraudulent student loan consolidation;

f. Global Doc thereafter e-mailed Ms. Taylor in attempts to collect the unlawful debts from consumers for the fraudulent student loan consolidation on behalf of EAC; and

g. Global Doc threatened to furnish negative credit reporting information regarding the unlawful debt should Ms. Taylor not remit payment to EAC.

181. Defendants continue to engage in the practice of unlawful student loan consolidation practices, as evidenced by their continued existence as business entities.

182. Defendants continue to engage in the practice of unlawful student loan consolidation practices, as evidenced by their websites advertising such practices.

183. On October 2, 2017, the Washington Attorney General filed a Complaint against Global Doc alleging violations of Washington's Debt Adjusting Act, RCW 18.28, and Consumer Protection Act, RCW 19.86. The action resulted in a Consent Decree being entered providing for $5,138.20 in consumer restitution and injunctions requiring compliance with Washington law.

184. Regarding EAC, the Better Business Bureau is currently reporting that:

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page **31** of 33

BBB files indicate that this business has a pattern of complaints concerning customers signing up for student loan consolidation services with third parties, complainants state they are confused as to how they wind up dealing with Equitable Acceptance Corporation. Equitable Acceptance Corporation purchases contracts from these third party companies and attempts to collect on payments due for services rendered. BBB brought this pattern of complaints to the attention of Equitable Acceptance Corporation. The company acknowledged issues in communicating with students and stated they are trying to fine-tune the transition process from when the loan consolidation services are utilized to when Equitable Acceptance takes over the contract. BBB also expressed concern about some of the third party loan consolidation services the company is working with, as some have F ratings with BBBs out of state. Equitable Acceptance Corporation pledged to work with companies they deal with to urge them to address any outstanding issues with BBB. However, the volume of complaints filed against the business has not decreased. The business was notified of this pattern January 2017, and has not provided a response regarding the pattern of complaints.

*See* https://www.bbb.org/minnesota/business-reviews/financing/equitable-acceptance-corporation-in-minnetonka-mn-3943/Alerts-and-Actions.

185.    Defendants agreed to violate RICO by charging unlawful student loan consolidation fees up-front, which is a pattern of racketeering activity or collection of unlawful debts.

186.    All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendants as follows:

   a.   Entering an order prohibiting the Defendants from engaging in student loan consolidation practices pursuant to 18 U.S.C. § 1964(a);

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 32 of 33

b. Awarding treble damages to Ms. Taylor for the increased student loan interest she will pay over the lifetime of her student loan repayment plan pursuant to 18 U.S.C. § 1964(c);

c. Awarding costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c); and

d. Any other and further relief as this Court deems just and equitable under the premise.

## DEMAND FOR JURY TRIAL

Plaintiff, **ASHLEY TAYLOR**, demands a trial by jury on all issues so triable.

Respectfully submitted this **July 26, 2018**,

/s/ Michael A. Ziegler
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

/s/  Kaelyn Steinkraus
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
13575 58th Street North, Suite 129
Clearwater, FL 33760
(p)  (727) 538-4188
(f)  (727) 362-4778
Attorneys and Trial Counsel for Plaintiff

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Taylor v. SAS Marketing group LLC d/b/a Global Loan Consolidation, Global Doc Prep Inc, and Equitable Acceptance Corp.*
Page 33 of 33